**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER ESBENSEN,** | : | **No. 3:14cv1513** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LIFE INSURANCE COMPANY OF** | : | |
| **NORTH AMERICA,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Defendant Life Insurance

Company of North America's motion for summary judgment in this case

dealing with the denial of long term disability insurance benefits.  The

parties have briefed their respective positions, and the matter is ripe for

disposition.

**Background**

Plaintiff Christopher Esbensen worked for Sears Holding

Management Corporation (hereinafter "Sears") as a service technician.

(Defendant's Statement of Facts (hereinafter "SOF") ¶ 3).[1]  Defendant

Life Insurance Company of North America (hereinafter "LINA") issued a

---

[1]For these background facts, we cite to the paragraphs of the
defendant's statement of facts to which plaintiff generally agrees.

Group Long Term Disability Policy (hereinafter "LTD") to Sears.  (SOF ¶ 1).  The LTD Policy is an employee benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (hereinafter "ERISA").[2]   Sears was the plan administrator and in turn granted complete discretion to LINA to interpret the plan and decide questions of eligibility for coverage or benefits.  (SOF  ¶ 2).

As an employee of Sears, plaintiff qualified for benefits under the LTD policy.  (SOF  ¶ 3).  He stopped working at Sears on October 13, 2012 due to severe pain/limited mobility.  (SOF ¶ 7).   Plaintiff indicated that he enjoyed good health until October 2012, when he developed pain throughout his body, without injury or trauma.  (Doc. 24, Administrative Record (hereinafter "R") at 583).  At the time, plaintiff was twenty-three (23) years old.[3]  (SOF ¶ 8).  From October 19, 2012 through March 7, 2013 plaintiff received short term disability benefits from defendant.  (SOF ¶ 10, Doc. 26, Pl.'s Resp. to SOF ¶ 10).

Plaintiff sought LTD benefits which defendant initially denied on March 20, 2013 based on its determination that plaintiff was capable of

---

[2]ERISA  provides minimum standards for employee benefits plans and uniform federal regulation of such plans.

[3]Plaintiff's date of birth is June 10, 1989.  (SOF ¶ 8).

sedentary work.  (SOF ¶ 11).  Plaintiff appealed the denial on April 1, 2013.  (SOF ¶ 12).  Defendant partially overturned its decision and granted benefits for three months through May 26, 2013, as plaintiff had started on new pain medication on February 26, 2013, and it would be reasonable to expect a three-month period of adjustment.  (SOF ¶ 13).

Defendant terminated the benefits again three months later on May 26, 2013, as plaintiff had provided no medical documentation that suggested a) the pain medication had not worked within the expected three-month window or b) plaintiff had an ongoing disability that prevented him from doing any occupation.  (Id.)  Plaintiff appealed the termination on January 1, 2014 through defendant's internal appeal procedure.  (SOF ¶ 15).

To evaluate the appeal, defendant obtained a peer review through a consulting company, MES Solutions.  (SOF  ¶ 17).  MES Solutions retained a doctor, Denise Beighe, M.D., to conduct the peer review. (SOF ¶ 18).  Dr. Beighe, after reviewing the medical documentation, concluded that plaintiff had certain physical limitations.  (SOF ¶ 21).  Specifically, she found that plaintiff:  a) could only walk or stand one (1) hour a day; b) could only lift/push/pull ten (10) pounds or less; and c) could not stoop,

bend, crawl, kneel, crouch, or squat at work.  (Id.)

Defendant ordered a transferable skills analysis to determine if any sedentary occupations existed that plaintiff could perform based upon the limitations Dr. Beighe noted.  (SOF ¶ 22).  An occupation specialist concluded that several jobs existed in the relevant market that plaintiff could perform.  (SOF ¶ 23).  Defendant thus denied plaintiff's request for long-term disability benefits.

Plaintiff then filed this ERISA action seeking an order that defendant pay plaintiff long term disability benefits.  (Doc. 1, Compl. ¶ 21).  The parties have briefed their respective positions and the appeal is ripe for disposition.

**Standard of review**

Plaintiff brings suit pursuant to 29 U.S.C. § 1132.  This section provides that a person may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits[.]"  29 U.S.C. § 1132(a)(1)(B).  The standard of review for an action brought under ERISA section 1132(a)(1)(B)  is not set forth in the statute.  The United States Supreme Court has held that courts should ordinarily apply a *de novo*

4

standard of review in assessing a plan administrator's denial of ERISA benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, if the ERISA plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, we review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009); Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009).  Under the abuse of discretion standard we may overturn a decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir.2011) (quoting Abnathya v. Hoffmann–La Roche, Inc., 2 F.3d 40, 45 (3d Cir.1993)).

In the instant case, we apply the abuse of discretion/arbitrary and capricious standard of review because the plan administrator, Sears, designated the defendant, LINA, fiduciary for the review of claims for benefits under the plan and provided it "the authority in, its discretion, to interpret the terms of the [Policy] . . . [and] to decide questions of eligibility for coverage or benefits under the [Policy]."  (R. at 676).

5

A decision is an abuse of discretion where "it is without reason,

unsupported by substantial evidence[,] or erroneous as a matter of law."

Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011).  The Third

Circuit Court of Appeals has further explained:

> We review various procedural factors
> underlying the administrator's decision-making
> process, as well as structural concerns regarding
> how the particular ERISA plan was funded, to
> determine if the conclusion was arbitrary and
> Whereas the structural inquiry focuses on the
> financial incentives created by the way the plan is
> organized, i.e., whether there is a conflict of
> interest, the procedural inquiry focuses on how the
> administrator treated the particular claimant.
> Specifically, in considering the process that the
> administrator used in denying benefits, we have
> considered numerous "irregularities" to determine
> whether, in this claimant's case, the administrator
> has given the court reason to doubt its fiduciary
> neutrality.  Ultimately, we "determine lawfulness by
> taking account of several different, often
> case-specific, factors, reaching a result by
> weighing all together.

Id. (internal citations and quotation marks omitted).

At issue is a motion for summary judgment.  Granting summary

judgment is proper "'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'"  See Knabe v.

6

Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P.

56(c)). "[T]his standard provides that the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

**Discussion**

Plaintiff is entitled to LTD benefits under the policy only if he is

"Disabled" as that term is defined in the policy.  The policy defines

"Disability/Disabled" as follows:

> The Employee is considered Disabled if, solely
> because of Injury or Sickness, he or she is unable
> to earn more than 80% of his or her Indexed
> Earnings from any Employer in his or her local
> economy at any occupation for which he or she is
> reasonably qualified based on education, training
> or experience.
>     After Disability Benefits have been payable
> for 24 months, the Employee is considered
> Disabled if, solely due to Injury or Sickness, he or
> she is unable to earn more than 60% of his or her
> Indexed Earnings from any Employer in his or her
> local economy at any occupation for which he or
> she is reasonably qualified based on education,
> training or experience.

(R. at 649)

Here, the defendant argues that plaintiff is not disabled under the

7

plan and that this conclusion is supported by the medical records and the

report of its peer review consultant.  Plaintiff on the other hand argues that

defendant improperly based its decision on the report of a peer review

doctor who did not examine plaintiff but merely did a "paper-review"

consultation that came to a conclusion contrary to the treating and

examining physician's consistent and concurring opinion that plaintiff is

disabled.  After a careful review, we agree with the plaintiff.

We must review the medical records to determine if defendant made

an arbitrary and capricious denial of benefits.  The starting point for this

analysis is the defendant's peer review consultant's report as it is upon

this report that defendant based its decision to deny benefits.  The

consultant appears to derive the bulk of her opinion to deny benefits from

the records of Dr. Vito Loguidice.  Loguidice is an orthopedist who

completed a physical ability assessment in March 2013.  (R. at 536-37).

He concluded that plaintiff could constantly reach, perform fine

manipulation, grasp, lift 20 pounds, carry 20 pounds, balance, stoop,

kneel, crouch, crawl, see and hear.  (Id.)  He further concluded that

plaintiff could frequently stand, walk, lift 50 pounds and carry up to 50

pounds (Id.) and that he could occasionally, sit, lift up to 100 pounds, carry

up to 100 pounds, push or pull 50 pounds and climb.  (Id.)

The consultant's reliance on Loguidice's opinion, however, does not provide support for her conclusion.   She examined only one office record from Loguidice and the physical assessment form he completed a year and a half after he saw plaintiff.  Defendant claims that "[a]s Plaintiff was asserting a disabling spinal condition, his orthopedist's assessment was particularly pertinent." (Doc. 23, Def.'s Brief at 5).  We disagree.  Instead of treating plaintiff himself, Loguidice referred him to a rheumatologist in November 2012, after seeing plaintiff once.[4]

The record reveals that plaintiff did indeed begin treating with doctors who specialized in rheumatology.  Jolanta Zelaznicka, M.D., a rheumatologist, diagnosed plaintiff with undifferentiated spondyloarthropathy and possible ankylosing spondylitis in December

---

[4]"A rheumatologist is an internist or pediatrician, who received further training in the diagnosis (detection) and treatment of musculoskeletal disease and systemic autoimmune conditions commonly referred to as rheumatic diseases. These diseases can affect the joints, muscles and bones causing pain, swelling, stiffness and deformity." http://www.rheumatology.org/I-Am-A/Patient-Caregiver/Health-Care-Team/What-is-a-Rheumatologist#sthash.G7gXhPvy.dpuf (last accessed Mar. 16, 2016).

2012.[5]  (R. at 583).

Zelaznicka treated plaintiff with injections of an Ankylosing

Spondylitis medicine, Enbrel, which improved plaintiff's condition

according to a January 22, 2013 progress note.  (R. at 575). Dr.

Zelaznicka  indicated that plaintiff was not able to return to work, and

continued to have the same opinion a month later.  (R. at 575, 550-52).

Dr. Zelaznicka last saw the plaintiff in June 2013 and opined he had a

severe disease and was unable to do any manual work.  (R. at 331).

Dr. Zelaznicka completed a Physical Ability Assessment for use by

the defendant's peer review consultant.  (R. at 529-50).  The peer review

report indicates that Dr. Zelaznicka opined that plaintiff could lift less than

ten (10) pounds and carry less than ten (10) pounds.  (R. at 330).   In a

---

[5]"Ankylosing spondylitis is an inflammatory disease that can cause
some of the vertebrae in your spine to fuse together. . . . There is no cure
of ankylosing spondylities, but treatments can decrease your pain and
lessen your symptoms."
http://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/basic
s/definition/con-20019766. (last accessed Mar. 16, 2016).
"Undifferentiated Spondyloarthropathy (USpA) is a term used to describe
symptoms and signs of spondylitis in someone who does not meet the
criteria for a definitive diagnosis of [Ankylosing Spondylitis] or related
disease.
https://www.spondylitis.org/Learn-About-Spondyloarthritis/Undifferentiated-
Spondyloarthropathy (last accessed Mar. 16, 2016).

telephone call to the consultant, however, Dr. Zelaznicks emphasized that she considered defendant to be unable to do manual labor, but that she had not treated him for approximately nine (9) months and **could not comment on his disability since that time**.  (R. at 328).  Regardless, it appears that the peer review consultant relied on the assessment that Dr. Zelaznicka completed in rendering her decision.

At the time of the review, plaintiff was being treated by Ellen M. Field, M.D. another rheumatologist.  Dr. Field wrote a letter on plaintiff's behalf stating: "Christopher Esbensen is a patient of mine who suffers from Ankylosing Spondylitis.  He is incapacitated from any job.  He has marked limitation of motion and pain."  (R. at 455).  This letter is dated March 5, 2014 approximately a month before the issuance of the peer review report.  (R. at 332).

Dr. Field gave the same opinion to defendant's consultant when she called to discuss plaintiff's health status three days before the issuance of the peer review report.  The consultant reported that: "Dr. Field stated the [plaintiff] had no insurance for a while and was unable to get Remicade so AS (ankylosing spondylitis) flared.  Now the claimant is back on Remicade and his AS is not under control yet.  Lyrica was added to help pain.  Dr.

Field feels the claimant is unable to work at all at this time.  She thinks

that maybe in 1 year he may be able to do sedentary work." (R. at 328).

   Based on all of the above, the defendant's decision is an abuse of

discretion.  It should have been clear when reading the report of the

consultant that her conclusion was based on stale records of a doctor who

was not treating plaintiff and that the records of plaintiff's treating

physicians were ignored or minimized.  Generally,  "[t]he Courts have

frequently expressed concern where, as here, the administrator denies a

claim with reliance on the reports of paper-review consultants, in

opposition to the treating and examining physicians' consistent and

concurring opinions that the claimant is disabled." Schwarzwaelder v.

Merrill Lynch & Co., 606 F. Supp. 2d 546, 559 (W.D. Pa. 2009).  Such

concern increases, where as here, the conclusions of the paper-review

consultant is simply not supported by the medical records.

   In summary, defendant relied upon its consultant's report to deny

benefits.  The consultant did not physically exam the plaintiff, but merely

reviewed his medical records.  The evidence that defendant's consultant

relies on to find that defendant is not "disabled" under the plans, is from a

doctor who, as far as the records the consulted reviewed are concerned,

examined plaintiff one time and then referred him to the rheumatologists.

Moreover, both rheumotologists who treated plaintiff opined that he was

indeed disabled.[6]  According to the peer review report, both of the

rheumotologists reported their conclusion to the consultant in telephone

conversations.  (R. at 328).  The conclusion by the peer review consultant

is without reason when the evidence of record is examined.  Thus,

defendant acted arbitrarily and capriciously when relying on the peer

review report to deny benefits.

**Conclusion**

For the reasons set forth above, we will deny defendant's motion for

summary judgment.  We will grant judgment to the plaintiff.  An

appropriate order follows.


**Date: <u>March 21, 2016</u>**          **s/ Jams M. Munley**
                                         **JUDGE JAMES M. MUNLEY**
                                         **UNITED STATES DISTRICT COURT**

---

[6]Plaintiff also visited a physical therapist.  In a letter dated November
5, 2013, plaintiff's physical therapist stated that plaintiff was making steady
progress with his physical therapy, increasing his range of motion and
general mobility, although his pain intensity remained unchanged.  (R. at
424).  Over the next several months the physical therapist reported steady
progress and a reduction in plaintiff's pain.  (R. at 425, 433).